Joseph Skehan, Appellant *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Appellee.

420

Argued March 10, 1977, before Judges WILKINSON, JR., MENCER and BLATT, sitting as a panel of three.

*Donald Driscoll,* for appellant.

*Linda M. Gunn,* Assistant Attorney General, for appellee.

OPINION BY JUDGE MENCER, June 7, 1977:

Dr. Joseph Skehan has filed an appeal in this Court from a determination by the Department of Public Welfare (DPW) that he was ineligible for food stamps for the certification period commencing January 1, 1976 and ending March 31, 1976.[1]

---

[1] Dr. Skehan received food stamps for the certification period October 1, 1975 to December 31, 1975.

The record discloses that in December 1975 Dr. Skehan owned four rental properties from which he received self-employment income of $490 per month and that he received Social Security payments for himself and daughter in the amount of $152.20 per month. The DPW computed Dr. Skehan's adjusted net food-stamp income to be $364.29 per month[2] and, since this amount exceeded the income exclusion point of $307, made a determination that Dr. Skehan was not eligible for food stamps during the next three-month certification period.

Our scope of review of decisions of the DPW relating to the payment of public assistance funds is limited to a determination of whether the adjudication was in accordance with law, whether constitutional rights were violated, and whether all necessary findings of fact were supported by substantial evidence. *Bowen v. Department of Public Welfare*, 21 Pa. Commonwealth Ct. 144, 343 A.2d 690 (1975).

Dr. Skehan advances three contentions in this appeal. First, he asserts that the DPW hearing officer's decision did not, as required by federal regulations, refer to those regulations upon which she based her determination and that "[c]onsequently, the reasoning which took place in arriving at her decision is not known." We find this contention to be without merit since even a cursory examination of the hearing officer's four-page decision discloses the detailed step-by-step reasoning process used by her to reach her decision. We can only conclude that she fully and adequately rendered her decision with commendable clarity. In addition, she cited Section 3754.248 of the de-

---

[2] DPW subtracted from Dr. Skehan's total monthly resources of $642.20 the following amounts to determine his adjusted food-stamp income: self-employment deductions chargeable to the rental properties of $148.98, medical deduction of $34.28, and an allowable shelter deduction of $94.65.

partmental regulations, DPW-PA Manual §3754.248, as authority for subtracting identifiable costs of producing self-employment income from the gross income when computing adjusted net food-stamp income.

Next, Dr. Skehan contends that he must be allowed annualization of his rental income. DPW regulations do provide that for households whose income is not received on a regular basis, such as a single-crop farmer or recipient of a scholarship grant, the annual income may be prorated to a monthly figure. However, in the instant case, when Dr. Skehan applied in December of 1975 for recertification of his food-stamp eligibility, all of his properties were currently rented, and Dr. Skehan was receiving total rental payments of $490 per month. He did not indicate that he anticipated a vacancy to occur within the next three-month recertification period. We hold that under these circumstances the DPW's decision not to annualize income on the basis of 1975 rental receipts was not erroneous and did not constitute an abuse of discretion.

Finally, Dr. Skehan asserts that his constitutional rights have been violated because only those self-employment expenses attributable to his Bloomsburg residence which were separately billed were subtracted from his gross rental income. Certain expenses relative to Dr. Skehan's residence property were not allowed as a deduction from rental income because the expenses were not billed separately to reflect the portion attributable to the rented second-floor apartment. However, these expenses were allowed as shelter costs to Dr. Skehan. The shelter-cost deduction is that portion of the household's shelter expenses which exceed 30 per centum of the household's net income.

Therefore, we are called upon to interpret the language of Section 3754.248 of the departmental regulations which provides:

For housholds whose mortgage payments represent an investment in the household's residence as well as investment in income-producing property, the mortgage payment, interest, and taxes are deductible only as part of the household's shelter costs and not as a cost of producing income. However, *if the household can document that costs on that portion of the home used in the self-employment enterprise are separate and identifiable*, taxes, interest, and other identifiable costs (but not including payments on the mortgage principal) may be deducted as a cost of doing business. (Emphasis added.)

Dr. Skehan argues that requiring separate billing is contrary to both the Supremacy and Equal Protection Clauses of the United States Constitution and only cites in support therefor the case of *San Antonio School District v. Rodriguez*, 411 U.S. 1, *reh. den.*, 411 U.S. 959 (1973). We read *Rodriguez* to support the unquestioned legal axiom that a state may not provide dissimilar treatment to persons similarly situated without a showing that such classification rationally furthers some legitimate, articulated state purpose.

Here we are not truly confronted with a classification of landlords who do or do not have separate metering or billing systems for their tenants and whether different treatment is afforded to them by DPW but rather with the identifiable aspect of that portion of the costs of the home used in the self-employment enterprise. "Identifiable" must mean that the costs can be allocated to either the residence or rented apartment and that such expenses can be shown to be attributable to the one and not the other. The single billing for utility and other expenses relative to Dr. Skehan's residence property makes it impossible for the identifiable requirement of the regulation to be met.

Likewise, the regulation states that the costs in question are to be separate as well as identifiable. Expenses such as real estate taxes, interest on a mortgage, insurance, snow removal, and lawn care are not increased, whether the rental unit is occupied or not. Trash removal is an item of expense that would not be appreciably increased by the presence of tenants in a second-floor apartment. The only three items claimed by Dr. Skehan that would be readily divisible would be heat, water, and sewerage. Even if these items, which Dr. Skehan's figures showed totaled $603.72 per year, would have been allocated in full to the rental unit with nothing allocated to his own residence, the added deduction would have been only $50.31 per month, and his adjusted net food-stamp income would have been $313.98, an amount that would also exceed the income exclusion point of $307.

We have carefully considered this record and are totally satisfied that Dr. Skehan has been treated fairly, that none of his constitutional rights have been violated, and that the DPW determination of his ineligibility for food stamps for the certification period of January 1, 1976 to March 31, 1976 was correct and in accord with the applicable law.

Therefore, we make the following

ORDER

AND Now, this 7th day of June, 1977, the determination of the Department of Public Welfare denying Dr. Joseph Skehan food stamps for the certification period commencing January 1, 1976 and ending March 31, 1976 is hereby affirmed.